UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRUCE ECKHARDT,

                                 Petitioner,

        v.

SUPERINTENDENT, Attica Correctional Facility,

                                 Respondent.

9:04-CV-0559
(GLS/GHL)

---

APPEARANCES:                             OF COUNSEL:

OFFICE OF TERESA C. MULLIKEN        TERESA C. MULLIKEN, ESQ.
Counsel for Petitioner
P.O. Box 204
Harpersfield, New York 13786

HON. ANDREW M. CUOMO             DANIELLE L. ATTIAS, ESQ.
Attorney General for the State of New York    Assistant Attorney General
 Counsel for Defendants
120 Broadway
New York, New York 10271

GEORGE H. LOWE, United States Magistrate Judge

**REPORT AND RECOMMENDATION**

**I.    THE HABEAS PETITION**

On May 18, 2004, Petitioner Bruce Eckhardt, represented by counsel, filed a Petition under 28 U.S.C. § 2254 for a writ of *habeas corpus*. He challenges the judgment entered on July 23, 2001, in New York Supreme Court, Otsego County, convicting him, after a jury trial, of Murder in the Second Degree (New York Penal Law § 125.25(1)), and sentencing him to an indeterminate term of from 25 years to life. Petitioner's conviction was affirmed by the

1

Appellate Division, Third Department, and leave to appeal to the Court of Appeals was denied. *People v. Eckhardt*, 761 N.Y.S. 2d 338 (N.Y. App. Div. 2002); *leave denied* 100 N.Y.2d 620 (Exhibits C, E).

## II.   THE CLAIMS

The Petition for *habeas* relief is based upon the following grounds:

1. His Fourth Amendment rights were violated when evidence was used against him that had been obtained pursuant to an unconstitutional search and seizure.

2. His Fifth and Sixth Amendment rights were violated when statements were used against him that were obtained without *Miranda* warnings and without his attorney being present.

(Dkt. No. 1 at 5.)

## III.   THE RELEVANT FACTUAL BACKGROUND

Petitioner was indicted for allegedly murdering his estranged girlfriend, Donna Evans. Prior to trial he moved to suppress physical evidence that had been seized, without a warrant, from the residence that he had shared with Ms. Evans and from a rental car. He also sought to suppress statements that he had made that were obtained without prior *Miranda* warnings and at a time that he claims he was represented by counsel.

Since I find, as discussed in Part IV.A below, that Petitioner's Fourth Amendment claim is not cognizable in this *habeas* proceeding, I will not address the facts underlying that claim. With respect to his Fifth and Sixth Amendment claims, on several occasions statements were obtained from Petitioner during the period August, 1998, through December 16, 1999, when he

was arrested[1].

At the County Court suppression hearing, attorney William Schebaum testified that from June or July through September of 1998, he represented Petitioner in an Otsego County Family Court matter involving Ms. Evans. (Trial Transcript, Vol. 1, Hearing of 8/28/00 at 43-44.) At some point during that period he had a telephone conversation with a member of the New York State Police. He initiated the call because Petitioner had told him that the State Police wanted to talk to Petitioner and also because there was an issue concerning Petitioner's access to the residence he had been sharing with Ms. Evans. (*Id.* at 45-46.) Mr. Schebaum testified that in the telephone conversation with an unidentified member of the State Police "I indicated that I was [Petitioner's] attorney and I was representing him and that should they want to speak with him, that they could let me know or contact me in some fashion and maybe something could be arranged". (*Id.* at 47.) He could not recall giving the officer a specific instruction not to question Petitioner in his absence (*Id.* at 48); indeed, he specifically disavowed a statement he had made in an affidavit that he *had* instructed the police not to question Petitioner. He testified: "That affidavit probably needs to be corrected somewhat." (*Id*. at 48-49.)

Mr. Schebaum also could not recall whether he was told that the police wanted to talk to Petitioner about Ms. Evans' disappearance. (*Id*. at 48, 61.) He could not recall ever saying anything to the police specifically related to the disappearance of Ms. Evans. (*Id*. at 69.) Although his affidavit stated that this conversation occurred on August 1, 1998, and it was with the State Police in Keesville, New York, in his testimony Mr. Schebaum disavowed these

---

[1] Certain statements were made by Petitioner *after* December 16, 1999, but these were suppressed on the ground that the right to counsel had attached as of the arrest.

statements. (*Id.*. at 55.) He made no notes about the conversation. (*Id.*. at 56.)

A New York State Police Investigator, Kevin More, testified that on August 13, 1998, he had a telephone conversation with Mr. Schebaum. Investigator More testified that Mr. Schebaum

> called up and wanted to talk about, he said was a matter of some checks, that a subject by the name Bruce Eckhardt had some dealings with his employer over some checks. He said that, he asked if I was investigating the case and I told him that I wasn't and I mentioned that he had spoken to Sergeant Brown a couple weeks prior to that time about the checks and he also mentioned that he was representing Mr. Eckhardt in a Family Court matter. He said that – he said he had spoken to Mr. Eckhardt and told him that if the State Police were looking for him, to come on in and get whatever matter taken care of that he had to. He also said that Mr. Eckhardt was staying at his brother's house and that if we needed to get a hold of him, that Mr. Schebaum could get him and have him come in the following day.

(*Id.* at 86.) According to Investigator More, Donna Evans was not discussed during the conversation. (Trial Transcript, Vol. 2, Hearing of 9/25/00 at 9.) The investigator made notes of the conversation after it concluded. (*Id.* at 8.)

In his decision the County Court Judge ruled:

> Mr. Schebaum's testimony, at odds as it was with his previously submitted affidavit, significant portions of which he disavowed at the hearing, cannot be relied upon to establish that he communicated to the New York State Police that he represented the Defendant in connection with the disappearance of Donna Evans. Mr. Schebaum's testimony not only disavowed certain factual statements in his affidavit, the sum and substance of his testimony was extremely vague as to dates, to whom he spoke and about what he spoke ... Schebaum's claim that he specifically told some member of the state police that he represented Defendant in connection with the disappearance of Donna Evans is simply not established by the credible evidence. His testimony did not establish that he represented the defendant in connection with the disappearance of Ms. Evans, nor

4

>   that he or the Defendant ever communicated this to the police.

(State Court Records, Ex. I at 106-07.)  The Judge further found:

>   To the extent Mr. Schebaum's testimony at the hearing was inconsistent with that of Investigator More's, the Court resolves those discrepancies in favor of the People's evidence.

(*Id.* at 108.)  The Court also found that Petitioner's right to counsel did not attach until his arrest on December 19, 1999.  *Id.*

The Appellate Division affirmed, stating: "The evidence does not demonstrate that the police knew that defendant had requested or retained an attorney to represent him in connection with the disappearance of Evans."  (State Court Records, Ex. C, at 3.)

## IV.    DISCUSSION

### A.    THE FOURTH AMENDMENT CLAIMS

Petitioner asserts that his "conviction [was] obtained by use of evidence gained pursuant to an unconstitutional search and seizure".  (Dkt. No. 1 at 5.)  As "supporting facts" for this assertion, Petitioner states:

>   Decedent's[2] landlord agent told police upon their arrival at Defendant's and Decedent's home that she had twice searched the home and not found Decedent.  Police conducted a three-day warrantless search and extensive seizure of forensic evidence on alleged basis of "emergency exception" rule.  However, there was no evidence that Decedent was in "immediate need of assistance".

*Id.*  These claims are unreviewable by this Court.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that a petitioner is not entitled to *habeas* relief if the state courts provided "an opportunity for full and fair litigation" of

---

[2] The "Decedent" referred to is Ms. Evans.

5

a claim under the Fourth Amendment. *Stone v. Powell*, 428 U.S. at 482. Thus, a federal court may only review a claim based on the Fourth Amendment "(a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *Campbell v. Greene*, 440 F. Supp. 2d at 138 (citing *Capellan*). New York law provides such a corrective procedure for Fourth Amendment claims in the form of a suppression hearing. *See* Crim. Proc. Law §§ 710.10 *et seq.*, *see also Cappellan v. Riley*, 975 F.2d at 70 n. 1 (holding that "federal courts have approved New York's procedure for litigating Fourth Amendment claims ... as being facially adequate"); *Campbell v. Greene*, 440 F. Supp. 2d at 138.

Here, Petitioner was provided with a suppression hearing and he does not claim that he was precluded from a full and fair opportunity to litigate his Fourth Amendment claims. *See* Pet. The Second Circuit has held that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

However, Petitioner claims that there "was an 'unconscionable breakdown' in the state courts because the state failed to conduct a reasoned inquiry into petitioner's claim." (Dkt. No. 11 at 20.) The reason for this "unconscionable breakdown", according to Petitioner, is that the state courts reached, in his opinion, an incorrect conclusion.

6

> The Otsego County Court erroneously found that the warrantless police entry occurred under exigent circumstances, despite the clear evidence that no emergency situation existed. The intermediate Appellate Court affirmed the County Court findings, despite the clear evidence that no emergency situation existed.

*Id*. However, a "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process". *Capellan v. Riley*, 975 F.2d at 72.

It is undisputed that Petitioner was provided with a pretrial suppression hearing, and he makes no claim that he was denied the opportunity to fully present his arguments at that hearing. Following the hearing, the County Court Judge issued a written decision in which he addressed in some depth, *inter alia*, the Fourth Amendment suppression issues. (State Court Records, Ex. I.) The Appellate Division, Third Department, on direct appeal following Petitioner's conviction, also addressed these issues in some depth. (State Court Records, Ex. C.) In short, although Petitioner vigorously disputes the state courts' rulings on his Fourth Amendment suppression claims, this Court finds that there was not an "unconscionable breakdown" of the state court procedures, and therefore Petitioner's claims are unreviewable by this Court. I accordingly recommend that the Petition be denied with respect to the Fourth Amendment claims.

### B. PETITIONER'S STATEMENTS AND HIS FIFTH AND SIXTH AMENDMENT RIGHTS

The Petition in this proceeding states:

> Defendant retained attorney for mutual family court case with Decedent. Decedent disappeared during pendency of family court proceedings. Defendant's attorney called state police to advise that he was Defendant's attorney for purposes of police investigation into Decedent's disappearance. Police repeatedly questioned Defendant in absence of attorney.

7

(Dkt. No. 1 at 5.)  Petitioner then argues, in wholly conclusory terms and without citations to any legal authority, that his "sixth amendment right under the federal constitution to assistance of counsel in a criminal prosecution, and [his] right under the fifth amendment of the constitution not to be compelled to incriminate himself were violated." (Dkt. No. 11 at 21.)

### 1. **Exhaustion**

Respondent first argues that Petitioner failed to present these Federal Constitutional claims to the state courts.  (Dkt. No. 9 at 20-21.)  To be eligible for *habeas* relief the Federal Constitutional claim must have been "fairly presented" to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  This is to ensure that the state courts are given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Id*.  Finally, *habeas corpus* petitioners bear the burden of demonstrating that they have exhausted available state remedies.  *Cruz v. Artuz*, Civ. No. 97-2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998); *United States ex rel. Cuomo v. Fay*, 257 F.2d 438, 442 (2d Cir. 1958)); *see also Ruine v. Walsh*, Civ. No. 00-3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citing *Colon*, 19 F. Supp. 2d at 119-20)).

Here Respondent acknowledges that Petitioner's Brief to the Appellate Division stated "Defendant's right to counsel and his right against self-incrimination were thus violated."  State Court Records, Ex. A at 45.  However, Respondent argues that in his Brief Petitioner "relied exclusively on state law and made no reference to any federal constitutional issues", and that "the state cases petitioner relied on [did not] cite federal law as a basis for their decisions."  (Dkt. No. 9 at 21.)

In *Baldwin v. Reese*, 541 U.S. 27 (2004), the Supreme Court held that a petitioner who

did not "explicitly say that the words 'ineffective assistance of appellate counsel' refers to a federal claim" failed to exhaust that claim. *Id*. at 33. The Court stated that

> a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claims in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies, or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'

*Id.* at 32. Petitioner here did none of these things with respect to his right to counsel claim[3], and indeed the Appellate Division's decision was explicitly limited to the *state* constitutional claim: "Accordingly, we find that defendant's state constitutional right to counsel was not violated." *People v. Eckhardt*, 761 N.Y.S.2d 338, 341 (N.Y. App. Div. 2003).

Nevertheless, subsequent to *Baldwin*, the Second Circuit addressed a question that the Supreme Court in *Baldwin* explicitly left open: "Where state and federal claims share the same legal standard, has a federal claim been 'fairly presented' when the state court necessarily rejects the federal claim in ruling on the state claim?" *Jackson v. Edwards*, 404 F.3d 612, 620 (2d Cir. 2005). The *Jackson* court answered that question affirmatively, but that does not help Petitioner because here the New York and federal right to counsel do not have the same legal standard. Under the New York Constitution, according to the cases cited by Petitioner in his Appellate Division Brief, "the right to counsel attaches indelibly where an uncharged individual has actually retained a lawyer in the matter at issue." *People v. West*, 81 N.Y.2d 370, 373-374 (1993). Under the Federal Constitution, to the contrary, the Sixth Amendment right to counsel "does not attach until after the initiation of formal charges." *Moran v. Burbine*, 475 U.S. 412, 431 (1986).

---

[3] It is noteworthy that with regard to the search and seizure claims presented to the state courts Petitioner explicitly referenced the "federal constitutional fourth amendment right" and he cited to federal cases. State Court Records, Ex. A, at 56-80.

*See also Pulliam v. West*, No. 03 CV 4514 (JG), 2004 WL 2413385, at *6 (E.D.N.Y. Oct. 12, 2004) ("The Sixth Amendment right to counsel does not attach until after initiation of formal charges") (citing *Moran*); *Lazoda v. Magg*, 900 F.Supp. 596, 604 (N.D.N.Y.,1995) (Munson, J.) ("The right to counsel does not attach until the filing of formal charges") (citing *Moran*).  In short, since the legal standards are different Petitioner failed to "fairly present" his Sixth Amendment right to counsel claim to the state courts.

With respect to his Fifth Amendment right against self-incrimination claim, this claim clearly was not "fairly presented" to the state courts.  It is true that in his Appellate Division brief Petitioner referred to his "right to counsel and his right against self-incrimination."  State Court Records, Ex. A at 45.  However, this is his *sole* reference to the right against self-incrimination, and the entire discussion in his Brief is in the context of his right to counsel.  The People's Appellate Brief and the Appellate Divisions's decision similarly, and understandably, are limited to the right to counsel issue.  Furthermore, Petitioner's letter seeking leave to appeal to the Court of Appeals refers only to the "right to counsel," and makes no mention of the right against self-incrimination.  State Court Records, Ex. D.

Accordingly, I find that Petitioner has not met his burden of demonstrating that his claim that statements were elicited from him in violation of his Fifth and Sixth Amendment rights has been exhausted.

When a claim has not been fairly presented to the state courts, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 188 F.2d 136, 139 (2d Cir. 1997)); *Lurie v.*

*Wittner*, 228 F.3d 113, 124 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).  Therefore, this Court must determine whether it would be futile for Petitioner now to present his Fifth and Sixth Amendment claims to the state courts.

Since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *Aparicio*, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)), Petitioner could not now properly raise these claims in a motion to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10.  See *Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995).  Therefore, these claims are "deemed exhausted" for purposes of Petitioner's *habeas* application.  *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, Civ. No. 00-5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).  However, although these claims are "deemed exhausted," they are also procedurally barred.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 711 at 735 n.1).

Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for the procedural bar and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.  *See St. Helen v. Senkowski*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish "cause," a petitioner must show that some objective external factor impeded

his ability to either comply with the relevant procedural rule or fully exhaust his federal claims. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, Civ. No. 00-7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray*, 477 U.S. at 488 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984) and quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)). *See also Bossett*, 41 F.3d at 829 (citing *Murray*, 477 U.S. at 488); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992); *Lovacco v. Stinson*, Civ. No. 97-5307, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray*, 477 U.S. at 488).

Here Petitioner has not asserted even a claim of cause for his failure to exhaust. As a result, this Court need not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in a fundamental miscarriage of justice, federal *habeas* relief is unavailable as to procedurally barred claims unless **both** cause and prejudice are established. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *McLeod v. Moscicki*, Civ. No. 02-9335, 2003 WL 22427757, at *8 (S.D.N.Y. Oct. 22, 2003) (citing *Murray*, 477 U.S. at 494); *You v. Bennett*, Civ. No. 00-7514, 2003 WL 21847008, at *7 (E.D.N.Y. July 29, 2003) (citing *Coleman*, 501 U.S. at 750); *Ayuso v. Artuz*, 2001 WL 246437, at *9 (S.D.N.Y. Mar. 7, 2001); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

Finally, this Court finds no basis to conclude that the denial of Petitioner's procedurally barred claims would result in a fundamental miscarriage of justice, which exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "To establish actual innocence, petitioner must demonstrate that, in

light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks and citations omitted).  Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal sufficiency."  *Id.*

I find that there is no basis in the record for concluding that it is probable "that no reasonable juror would have convicted [Petitioner]."

Since Petitioner has procedurally defaulted his Fifth and Sixth Amendment claims and has failed to establish either cause for that default or that he is actually innocent, this Court recommends that these claims be denied as unexhausted and procedurally barred.

### 2.      The Merits

As an alternative basis for recommending dismissal of the Petition, I will address, briefly, because the law is clear, the merits of Petitioner's Fifth and Sixth Amendment claims.

#### (a)      Sixth Amendment Right to Counsel

As noted above, under the Federal Constitution, the Sixth Amendment right to counsel "does not attach until after the initiation of formal charges." *Moran v. Burbine*, 475 U.S. 412, 431 (1986).  *See also Pulliam v. West*, No. 03 CV 4514 (JG), 2004 WL 2413385, at *6 (E.D.N.Y. Oct. 12, 2004) ("The Sixth Amendment right to counsel does not attach until after initiation of formal charges") (citing *Moran*); *Lazoda v. Magg*, 900 F.Supp. 596, 604 (N.D.N.Y.,1995) (Munson, J.) ("The right to counsel does not attach until the filing of formal charges") (citing *Moran*).  Petitioner makes no claim that any of the statements that were utilized against him were obtained after the initiation of formal charges.  Therefore his Sixth Amendment claim has no merit, and I recommend that it be dismissed on this alternative ground.

(b)     Fifth Amendment Right Against Self-Incrimination

As in the state courts, Petitioner in this *habeas* proceeding invokes the mantra of the Fifth Amendment right against self-incrimination, but he provides no argument, analysis or legal citation in this context. (Dkt. No. 11 at 21-22.) The statements that Petitioner sought to suppress but that were utilized against him were obtained from him prior to December 16, 1999, and were not preceded by *Miranda* warnings. However, the trial court found that "[a]t no time prior to December 16, 1999, was the Defendant in custody." State Court Records, Ex. I at 26. Petitioner has not disputed this finding. This finding, and Petitioner's implicit acceptance of it, is fatal to his claim, since it is settled that the safeguards prescribed by *Miranda* apply only to those who are "in custody." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Accordingly, Petitioner's Fifth Amendment claim has no merit, and I recommend that it be dismissed on this alternative ground.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**. Furthermore, the undersigned finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, I recommend that no certificate of appealability should issue with respect to any of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (*citing Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.1989)).

Dated: March 25, 2008
　　　　Syracuse, New York

　　　　　　　　　　　　　　　　　　　　　　／s／ George H. Lowe
　　　　　　　　　　　　　　　　　　　　　　George H. Lowe
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge